POULSEN v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. May 24, 1898.)

1. CARRIERS—INJURY TO PASSENGER—NEGLIGENCE—QUESTION FOR JURY.

In an action to recover damages for personal injuries suffered by plaintiff in consequence of the defendant's alleged negligence, it appeared that while the plaintiff was riding as a passenger in an open trolley car of the defendant, in the evening, a flashing or flaming shot out of the motor box or controller, from 2 to 6 feet high, enveloping the motorman, and continuing while the car proceeded for some 100 feet. The plaintiff was so much alarmed that she leaped from the car, and received the injuries complained of. There was evidence on behalf of the defendant that the apparatus was a standard appliance, but the flaming on this occasion was of a very unusual character; and it appeared that dirt in the controller was likely to cause such results, that the car in question had not been inspected that day, and that after the accident the controller was found to be dirty. *Held,* that the facts required the submission to the jury of the question of defendant's negligence.

934    51 NEW YORK SUPPLEMENT   (Sup. Ct.

and 85 New York State Reporter.

2. SAME—CONTRIBUTORY NEGLIGENCE.

  *Held* further, that the fact that other passengers remained in the car could not ·operate to conclusively establish contributory negligence on plaintiff's part in jumping.

  Appeal from trial term, Kings county.

  Action by Olga Poulsen against the Nassau Electric Railroad Company. Judgment for plaintiff. Defendant appeals. Affirmed.

  Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

  Stephen C. Baldwin, for appellant.

  Charles J. Patterson, for respondent.

  GOODRICH, P. J. The plaintiff, a woman 32 years of age, on the evening of August 12, 1896, was a passenger in an open trolley car of the defendant. The car was operated by a controller or motor box situated at the front railing of the car. · This controller is an upright box, having on the top a brake or handle which revolves a cylinder on the inside of the box. Around the cylinder are long strips of metal, called "fingers," which, as the cylinder revolves, come in contact with corresponding metallic fingers on an inclosing cylinder, thus making a circuit for the current. As the handle moves, to close or open the circuit, sparks or flashes are constantly emitted. Outside the interior works is a covering the inside of which is lined with asbestos, upon which are impressed and easily seen black marks occasioned by the sparks or flashes. These marks are more or less extensive, proportionally to the size of the flashes. The breaking of the current burns any dust or grease which may have been accumulated on the fingers, and sometimes melts the metal so as to create little knobs, and this increases the size of the flashes. At the top of the inclosing cover is an opening through which another brake or handle protrudes, which is used to turn the current on or off; and it is through this opening that the flashes are emitted so as to be visible to bystanders. Underneath the flooring at the forward end of the car is a fuse, consisting of a copper wire intended for a safety appliance, and of such size and density that a dangerous or unnecessarily strong current will melt it, and thus break the current. At the time of the accident, the car was going westerly, along Park avenue, Brooklyn, between Clermont avenue and Adelphi street, when a flashing or flaming shot out of the controller box at the front of the car. The motorman immediately turned off the overhead switch, and stopped the current of electricity by ·which the car was operated, thus putting out the flashing, after which the current was turned on again, and the car proceeded on its course for a distance of 100 feet, during which time the flashing continued. The electric fuse above described then burned out with another flash, whereupon the plaintiff and her niece Martha, a child 12 years of age, alarmed by the flashing, jumped from the car while it was still in motion, and the plaintiff, falling to the ground, broke her thigh bone, and received other injuries. The jury found a verdict in her favor of $7,500, and, from the judgment entered thereon, the defendant appeals.

This same accident was under consideration by this court in Poulsen v. Railroad Co., 18 App. Div. 221, 45 N. Y. Supp. 941, which was an action brought by the father of Martha, to recover damages for the loss of the child's services. The county court dismissed the complaint upon the merits, and the plaintiff appealed to the appellate division. This court (Mr. Justice Hatch writing the opinion) held that the case made by the plaintiff was sufficient to call upon the defendant for an explanation of the cause of the fire. The court said (18 App. Div. 222, 45 N. Y. Supp. 941):

"It was not claimed upon the argument that the blowing out of a fuse, in the usual course, was attended with any other display than a flash of light, and we may take notice that the operation of street cars by electricity is not attended by the appearance of a car on fire, or that it travels upon the track in a blaze of fire. When this phenomenon is present, it indicates an extraordinary condition and the presence of causes which are not usually co-existent in the ordinary operation of the car. Under such circumstances, the doctrine approved by us in Gilmore v. Railroad Co., 6 App. Div. 117, 39 N. Y. Supp. 417, has precise application."

In the Gilmore Case, in which Mr. Justice Bartlett wrote the opinion, the accident occurred from a sudden movement of the brake on the front platform, which being turned on tight, was set free in some unexplained manner, and struck the plaintiff as she was entering the car. The court said (6 App. Div. 119, 39 N. Y. Supp. 418):

"In the prudent operation of a street railroad, such an occurrence, endangering the safety of those who accept the invitation which is held out to them to become passengers, is unusual, to say the least; and the circumstances bring the case within the rule that where the thing which causes an accident is controlled or managed by the defendant, 'and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care,' "—citing cases.

Following these decisions, the defendant undertook, in the case at bar, to establish as a defense that the controller was a standard appliance, in use, and properly so, throughout the United States; that no system of inspection can prevent flashes escaping from the box containing the controller; that even new controllers of this standard type will produce these flashes; and that, in the ordinary use and management of such controllers, particles of dust or grease collected therein will cause such flashes. There was evidence clearly tending to show that the flash which issued from the controller box was of a startling and unusual character, continuing while the car was going a distance of about 100 feet, and that it was followed by another flash caused by the burning out of the safety fuse under the forward part of the car. Some of the witnesses describe the flashing or flaming from the controller as being from two to six feet in height, and enveloping the motorman, so that the whole front of the car seemed to be on fire. It is not surprising that such an exhibition should startle the plaintiff, and that, to save herself from danger, she jumped from the car; and the fact that other passengers remained does not conclusively establish contributory negligence on her part in jumping. It is a significant fact that the motorman was not called as a witness, and that no explanation of his absence was offered,—a fact which the jury were entitled to consider in judging of the cause and character of the

flashing or flaming which alarmed the plaintiff. The question, there-
fore, is whether the defendant discharged its duty to its passengers.

McCaig v. Railway Co., 8 Hun, 509, was an action to recover dam-
ages caused by sparks issuing from a locomotive. A judgment was
rendered for the plaintiff, which was reversed by the general term, the
court saying (page 601):

"The evidence was not sufficient to warrant a verdict for the plaintiff, without
further proof showing that such emission of sparks was unusual in degree or
character, or that the sparks were of an extraordinary size, and such as would
not be emitted from perfectly constructed locomotives."

This case has special bearing upon the case at bar, by reason of
the emphasis which the court placed upon the word "unusual"; and
it cannot be doubted from the testimony in this case that the appear-
ance of the flashing or flaming was of a very unusual character indeed.

Under the decisions above cited, the defendant was called upon to
prove that the accident occurred without fault on its part. We think
that the alleged explanation offered by the defendant did not explain.
Assuming that the controller and the fuse were standard in character,
and the usual appliances, and that the fuse was intended to prevent
an undue and dangerous amount of electricity from passing into the
controller, the evidence of the expert witnesses called by both parties
establishes that the controller is likely to become out of order by the
presence of dust or grease on the fingers, so that it will emit sparks of
unusual size; that there are three classes of light in successive grada-
tions, which are described as, first sparks, second flashing, and third
flaming; and that sparks are not dangerous, but that flashing, and
especially flaming, indicates danger. It was not shown that there was
any inspection of the car in question at any time during the day before
the hour of the accident. There is evidence showing that the car
was not allowed to continue its trip, but was taken back to the shop
after the accident, and that the defendant's examiner found that "the
controller was a little dirty;  *  *  *  just a little dusty, a little
dirty," although he adds that there was nothing unusual the matter,
and that he only found it necessary to replace the fuse, and that the
car was used the next day, without any repairs; but all of these mat-
ters were for the consideration of the jury in passing upon the question
of the defendant's negligence. One of the defendant's expert wit-
nesses testified that he had on several occasions seen sparks, six
inches in size, coming from a similar motor box, and that they were
caused by an "accumulation of dirt, most always across the contacts;
either a collection of dirt or a collection of moisture. I have never
known these flames to come from any other causes." The conductor
of the car testified: "I knew the controller was out of order. The
motorman told me that. I found it out as soon as the fuse blew. It
was found out that the controller was out of order by looking inside
the box. Q. What did you find inside the box? A. I saw that the
works were black, and that the motorman took the glove or handker-
chief or whatever he had to wipe it off." Thus, it appears that there
was no inspection of the car before it left the depot on the trip in
question; that the controller itself was out of order, and that this
fact was easily discoverable, and in fact was discovered by the subse-

quent inspection after the car was taken to the repair shop; that the motorman discovered something wrong about it, when he removed the outside covering, by reason of which the car was not permitted to continue its trip, and was taken back to the shop. These facts required the submission to the jury of the question of defendant's negligence in the inspection and use of the car.

Another ground upon which negligence may have been imputed to the defendant arises out of the fact that, after the flashing or flaming began, the motorman permitted the car to continue its course without stopping, to ascertain the cause of the flame, until a new element of apprehension was introduced, namely, the burning out of the fuse. The jury were entitled to take this matter into consideration in passing upon the defendant's negligence; so that whether the accident was caused by failure of inspection and the consequent use of a car of which the controller was not in good order, or whether it resulted from the continuing motion of the car after its dangerous condition might have been and was discovered, the jury were justified in assuming the defendant's negligence.

It follows that the judgment must be affirmed, with costs. All concur.